## Case No. 8,984.

### The MAJOR BARBOUR.

[Blatchf. Pr. Cas. 310.] [1]

District Court, S. D. New York. Jan., 1863.

PRIZE—FINAL DECREE — PRACTICE IN ADMIRALTY —MOTION TO REOPEN—COSTS.

1. The question of the allowance by the court of costs and fees to counsel and officers in prize cases discussed.

2. The court having at a previous term made a final decree distributing the proceeds of sale in the case, and awarding costs to various parties, a motion to reopen the question of costs was denied.

3. After the lapse of the term in which a decree is rendered in a prize case, the authority of the court to revoke or alter it is extinct.

4. The act and joint resolution of July 17. 1862 [12 Stat. 600, 627], in respect to prize cases, discussed.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured as prize, January 28, 1862, off the coast of Louisiana, by the United States war steamship De Soto, and sent to this port for adjudication. She was here libelled, March 18, 1862, in the name of the United States, and the capturing ship De Soto, and process of attachment and monition was on the same day issued thereon to the marshal against the prize, and was returned by him April 1 thereafter, duly served. In the intermediate time (March 28, 1862), an intervention was made, by claim and answer, in behalf of affreighters of the cargo, for the voyage on which the vessel was arrested, and the litigation was prosecuted upon that issue between the libellants and claimants to the final decision of the cause in this court. The suit was noticed for trial and brought to hearing April 28, 1862. Two days were fully occupied with the oral discussion of the case, and the counsel also reserved the privilege of laying before the court written arguments for the respective parties. Those supplementary arguments were received, and the whole case was considered by this court, and on the 28th of May the final decision on the merits was rendered [Case No. 8,983], but it was not presented by the United States attorney to the judge, in form, for signature, until July 29, 1862. On the 13th of April Mr. Upton gave in a petition of the master, for himself and crew, to intervene in the suit as captors of the prize, and to share in the distribution of its proceeds. On bringing

─────

[1] [Reported by Samuel Blatchford, Esq.]

In the report of the prize commissioners upon the order of reference to them, a decree designating the vessels entitled to share in that distribution was signed October 13, 1862. On the 12th of September the prize commissioners had their bill of costs for services rendered in the suit taxed by the judge; Mr. Upton his, as counsel for the captors, on the 27th of September; the district attorney his, August 2; the marshal his, December 15; and the clerk his, December 9, 1862. The counsel for the schooner Kittatinny presented no bill of costs in their behalf for taxation.

The venditioni exponas had been issued on the condemnation decree April 21, returnable the first Tuesday of June, and $800 of the proceeds of the vessel were paid into the registry of the court on the process, July 3. The residue, $43,767.76, appears, by the clerk's entries, to have been paid by the marshal directly into the treasury December 10, 1862. Previous notices of the time of the taxation of costs in the suit were given reciprocally by all the officers, except the counsel for the schooner Kittatinny, to the district attorney, and by the district attorney, as to his costs, to Mr. Upton, counsel for the captors. The commanding officers of the captor-vessels must be named in the libel. Stated Prize Rule 47. It was those captors named in the libel for whom alone the notice of appearance was given by the counsel (Mr. Upton), as far as was officially known to the court; although, undoubtedly, all other vessels participating in the capture were entitled, on their application, to be made co-parties as captors in the suit. After entering the decree of condemnation of the prize property before mentioned, proofs were brought before the prize commissioners, upon an order of reference to them, to determine what vessels were entitled to share in the distribution of the proceeds of the prize property; and upon the coming in of the report of such proofs by the prize commissioners, October 13, 1862, the court admitted the Kittatinny as one of the capturing vessels, and on the same day the decree of distribution conformably thereto was made and signed by the judge.

It appeared from the report of the commissioners that E. C. Benedict, appeared before them as counsel for the officers and crew of the Kittatinny, and conducted the proceedings in support of their interests, and had also appeared in court on their behalf, upon the hearing on the merits, but took no part in the oral discussion of the case in court. Upon representation to the court by E. C. Benedict, on the part of the firm of Benedict, Burr & Benedict, proctors, that the other officers of the court concerned in the suit before named had obtained a taxation of their costs for services rendered in the suit, and that their firm had received no notice from either of them, or from the court, of the time or place of such taxation, and that allowances of costs to such officers were made, on such taxation, to the prejudice of the parties they represent,

and that the whole proceeds of the condemned property adjudicated upon in this suit are about to be disbursed to the captors, after deduction therefrom of the allowances taxed as aforesaid, and without any compensation being reserved to those proctors for their services in the suit, he moved the court for an order rescinding such former taxations, and that such taxations shall be opened for review and rectification, and that the costs justly due and allowable to their firm in the cause be also taxed and adjusted by the court, and be deducted from the gross proceeds of the prize, before they are paid over to the libellants.

Several considerations of weight, both of practice and legal rights, are involved in this application. It is, under all circumstances, a most irksome and perplexing service imposed upon courts of justice, to measure and determine the rate of compensation to be allowed their officers, especially if not fixed by law, or if left in any degree to the unrestricted discretion of the court. The struggle between the demands for large allowances on the part of officers, and for severe restrictions and limitations to rates of compensation by those to be charged with the payment, are always embarrassing and vexatious, when no other rule is prescribed by law than the judge's appreciation of the character and value of the claims to be assessed and adopted; and most essentially so if the charges are constructive in character, and are claimed for services not rendered in the presence of the court. In prize cases, there is superadded a difficulty rarely presented in other instances—that the compensation of the officer is to be provided by assessing annually on each suit its individual proportion of the yearly allowance or salary payable to the officer for services rendered within the same year the suit was pending: that is, all the suits in prosecution during the year must each be taxed upon the amount recovered in it a common proportion of the costs (limited compensation to all but to counsel for captors) earned by the officers during the year. So that, by the laws as they stand, the district attorney, the marshal, the clerk and the prize commissioners, are prohibited receiving beyond fixed sums to each for a full year's service, and no rate or rule of taxation in respect to costs to counsel for captors is given; and, by other statutory provisions, the proceeds recovered in prize, cases, after the deduction of costs, are alloted to the pension fund for seamen and to the captors. The counsel for prize captors are entitled to receive costs, together with the officers above specified, out of such proceeds recovered. The secretary of the navy has, under the law of July 17, 1862 (section 12), employed F. H. Upton, Esq., as counsel to act for captors in all prize cases in this district, when the captors do not appoint counsel, to assist the district attorney and protect the interests of captors, with such compensation as he may think is just and reasonable.

In this case, it appears that the copartnership of Benedict, Burr & Benedict were appointed proctors by the officers and crew of the schooner Kittatinny, and acted in that capacity, with the district attorney and the general counsel for the capturing ship named in the libel, in conducting the legal proceedings in the cause, up to the coming into court of the report of the prize commissioners, upon which it was decreed that the vessel was co-operating with the De Soto in the capture of the schooner Major Barbour. It also appears that no notice was directly given to the Messrs. Benedict by the district attorney, or to any other of the officers of court claiming costs in this suit, of the time and place of the taxation of their own costs in the case, or that the Messrs. Benedict should produce and have taxed their own therein, and that the costs of the other officers were taxed by the judge, and that the Messrs. Benedict have just acquired knowledge of the fact, and that the marshal, after paying such taxed costs, has remitted the residue of the proceeds in his hands to the United States treasury. The Messrs. Benedict, on notice to the other officers whose costs were taxed, as above stated, apply now for an order, that the costs taxed to the prize commissioners, the district attorney, the marshal, and Mr. Upton, the other counsel for the captors in this cause, be rescinded, and that all the costs heretofore taxed be re-examined and re-taxed by the court, and also that costs to them as proctors for the ship's company of the schooner Kittatinny be taxed in their behalf, and be ordered to be paid out of the proceeds of said prize in the treasury.

This motion is resisted, on the part of the district attorney and the counsel for the other captors, because the matter is now out of the authority of the court, the proceedings being terminated in this court, and the moneys raised in this suit having been paid over by the marshal, and being no longer subject to the control of the court. No objection is made by the counsel for the other officers that a re-examination and re-taxation of all the costs awarded them in the case should be made, provided the court now possess any power over the funds. No costs were allowed on the taxation by the court, except upon the express assent of the counsel representing the libellants, and no item forbidden by law was sanctioned by the court; but it is palpable that the aggregate amount is large, and that many charges were allowed upon evidence which the captors, represented by Messrs. Benedict, would be rightfully entitled to discredit, by cross-examination or other testimony, had application been made in time therefor. But it appears to me that the present motion must be denied, inasmuch as all judicial power over the matter by this court is determined, and no effectual relief can be afforded the promovents, unless by revoking the final decrees rendered in this cause, the last of which was signed and re-

corded in October last. Those decrees have definitely passed upon the question of costs recoverable upon the evidence then before the court. Although the prize court is virtually open every day, yet its course of practice, its regular terms for returns of process, and its other judicial action are all in conformity with procedures in the court of admiralty proper, and, after the lapse of the term in which a decree is rendered, all authority to revoke or alter it is extinct in the court which rendered it. The Martha [Case No. 9,144]; U. S. v. The Glamorgan [Id. 15,-214]. The power of the court in the case ceases with the term in which its decree is made. U. S. v. Certain Hogsheads of Molasses [Id. 14,766]. Courts of law and equity are governed by the same doctrine (Hudson v. Guestier, 7 Cranch [11 U. S.] 1; Whiting v. Bank of U. S., 13 Pet. [38 U. S.] 6, 13; Washington Bridge Co. v. Stewart, 3 How. [44 U. S.] 424; Bank of U. S. v. Moss, 6 How. .[47 U. S.] 31); and in admiralty, the power of the court to set aside defaults is restricted, even during the sitting of the same term, to 10 days after the decree (Supreme Court Rule 40).

The final action of the court in this suit having been perfected in October term last, and, in respect to the allowance of the costs referred to, in terms prior to the present one, the decision cannot be disturbed or reviewed here in the present term of January. The counsel is no doubt entitled to have his costs taxed against his own clients in case he shall pursue his remedy at law against them personally; but I possess no judicial competency to issue any compulsory order which will have effect upon the treasury department, other than such as may go with the final decrees already rendered in this suit. It is proper, however, to observe that the counsel who were joint co-actors with the district attorney and the counsel for the capturing ship named in the libel must necessarily be deemed cognizant of the proceedings common to all parties in progress before the court up to the final termination thereof, and of the legal necessity of having their own costs taxed and embraced within the decree of the court, and also of opposing all improper allowances to other parties previous to the rendition of such decree, and that, accordingly, no error or irregularity was committed, by the court in signing the final decrees without including within them the costs which such counsel could legally charge and claim in their own behalf, or which they might have prevented being allowed to other parties, had they appeared and opposed the sanction of them before the authority of the court in the case had terminated. Had that degree of vigilance been exercised, no doubt the court would have required, in relation to the costs of all parties, that there should have been the fullest practicable opportunity given to all interested in the suit, to secure, on the taxation of costs, the enforcement of every

proper allowance, and the exclusion of any not clearly sanctioned by law and justice. But it is not to be overlooked that, since the act and joint resolution passed by congress July 17, 1862, the court has no longer the function of taking charge of prize proceeds or disbursing them, nor affixing the sum of costs payable out of them, except in the special instance of the counsel for the captors, but that, on the contrary, the proceeds go in gross into the treasury, and the costs to the marshal, the district attorney, and the prize commissioners are paid from the treasury under the restriction that these officers shall obtain no more from the entire proceeds for a year's service than the fixed sums therein specified; and no rule is furnished or intimation given by the law by which the court can determine what proportion of the sum of prize proceeds paid into the treasury in the suit ($44,167.76) shall be assigned towards the yearly allowances of the district attorney, marshal, and prize commissioners, or the other expenses of the suit, nor but that the whole amount of proceeds may be required to satisfy such liens for costs.

Enough has been stated in the preceding suggestions to show that the application made on the part of the promovents cannot prevail. The motion to open the decrees of the court and re-tax the costs in this suit, and to tax and enforce the costs of the movers against the fund in the treasury, is accordingly denied.